IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

HEATHER K.,

                  Plaintiff,              Civil Action No.
                                                  5:19-CV-0462 (DEP)

    v.

ANDREW M. SAUL, Commissioner of Social
Security,[1]

                  Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF MID-NEW     ELIZABETH V. KRUPAR, ESQ.
YORK, INC.
Syracuse Office
221 South Warren Street, Suite 310
Syracuse, NY 13202

_____

---

[1]     Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting
Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul
took office as Social Security Commissioner. He has therefore been substituted as the
named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, and no further action is required in order to effectuate this change. *See* 42
U.S.C. § 405(g).

FOR DEFENDANT

HON. GRANT C. JAQUITH                    KEVIN PARRINGTON, ESQ.
United States Attorney                         Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral

argument was heard in connection with those motions on April 29, 2020,

during a telephone conference conducted on the record. At the close of

argument I issued a bench decision in which, after applying the requisite

deferential review standard, I found that the Commissioner's determination

resulted from the application of proper legal principles and is supported by

substantial evidence, providing further detail regarding my reasoning and

_____

[2]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C.
§ 636(c), has been treated in accordance with the procedures set forth in General
Order No. 18. Under that General Order once issue has been joined, an action such as
this is considered procedurally, as if cross-motions for judgment on the pleadings had
been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)     Defendant's motion for judgment on the pleadings is GRANTED.

2)     The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      May 8, 2020
            Syracuse, NY

3

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
HEATHER K.,

                                    Plaintiff,


-v-                                 5:19-CV-462


ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                                    Defendant.
-----------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
April 29, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LEGAL AID SOCIETY OF MID-NEW YORK, INC.
    211 South Warren Street
    Suite 310
    Syracuse, New York 13202
    BY:  **ELIZABETH V. KRUPER, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **LUIS PERE, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1              (The Court and counsel present by telephone.   Time

2    noted:  11:29 a.m.)

3              THE COURT:   Plaintiff has commenced a proceeding

4    under 42, United States Code, Sections 405(g) and 1383(c)(3) to

5    challenge a determination by the Commissioner of Social Security

6    finding that plaintiff was not disabled at the relevant times

7    and therefore ineligible for the benefits for which she applied.

8              The background of this matter is as follows:

9    Plaintiff was born in January of 1977.  She is currently

10   43 years of age.  She was 38 years old at the alleged onset date

11   of her disability of January 1, 2015, and 39 years old at the

12   time she applied for benefits in February of 2016.  Plaintiff

13   lives in Oneida in an apartment by herself.  She has children

14   outside the home who, in May of 2016, were ages 17, 19, and 22.

15   She is currently separated from her husband.  The apartment in

16   which she lives is a second floor apartment requiring her to

17   climb stairs.

18             Plaintiff stands 5'8" in height and weighs somewhere

19   approximately between 130 and 136 pounds.  She is right-handed.

20   Plaintiff has a driver's license but no car.  She has a 9th

21   grade education and a GED.  While in school, she was in regular

22   classes.

23             Plaintiff stopped working in September of 2015

24   according to page 180 of the Administrative Transcript.  It

25   appears that may have been a temporary job.  She claims at page

1   181 that she has been unable to work since February 2, 2016.

2   Her past work includes working for T-Mobile, a communications

3   company; working in a Fastrac convenience store in 2010; various

4   food preparation positions; and a fieldworker in September 2014.

5   Plaintiff testified that she has made no effort to find work

6   since she moved to New York from Texas in or about 2014.  That

7   is found at page 59 of the Administrative Transcript.

8           Medically, plaintiff has an extensive record of

9   medical treatment, both for physical and for mental impairments.

10  She suffered a motor vehicle accident in December of 2005 and

11  suffered a right foot injury, specifically a calcaneus fracture,

12  as well as a left leg laceration.  She has had multiple

13  surgeries, her first occurred in January of 2006 by Dr. Daniel

14  Di Christina and it was an open reduction/internal fixation of

15  the right calcaneus area.  She has had many other surgeries

16  since that time, including in 2007 and 2008.

17          The plaintiff also has cervical spinal issues,

18  specifically including at C5 and C6 level.  She underwent a

19  cervical discectomy with fusion at that level in December of

20  2016.  There were magnetic resonance imaging testing performed

21  in June of 2016, at page 2239 and 2240 of the Administrative

22  Transcript, and again in June of 2017, reflected at 2250 of the

23  Administrative Transcript.  The cervical issues have been

24  addressed by Dr. Rudolph Buckley.  As I indicated before, the

25  foot issues have been addressed by Dr. Di Christina.  Plaintiff

1    also suffers from COPD and arthritis.

2             Mentally, plaintiff suffers from depression, anxiety,

3    posttraumatic stress disorder, bipolar disorder, and a

4    borderline personality disorder.  She was hospitalized in

5    Missouri in 2010 for, among other things, cutting herself and

6    Oswego in 2006 twice.  She receives counseling through the

7    Family Counseling Services of Cortland County.

8             Plaintiff has a fairly significant list of activities

9    daily living.  She testified that she does not cook, but that

10   she does microwave and struggles with that to some degree.  She

11   can clean.  Plaintiff does not shop, a friend shops for her.

12   She does not do laundry.  She does shower and dress and groom

13   herself.  She listens to the radio.  There was a conflict

14   concerning laundry at one point.  I think at page 56 she may

15   have testified that she did and another time, she -- with

16   struggle and another time, she indicated she did not.  She has

17   some friends.  She watches television and she reads.

18            In terms of medication, at various times she has been

19   prescribed Trazodone, Seroquel, Vindoline, Lamictal, Gabapentin,

20   a nebulizer, and an inhaler.  She also takes Aleve.  She

21   testified at the hearing at page 60 that she is currently not

22   taking prescription pain medications.

23            She, for three years apparently, smoked synthetic

24   marijuana, but stopped in July of 2015.  That's indicated at

25   page 253 and 1140 of the Administrative Transcript.  Plaintiff

1   has smoked -- at one point, at 550, she stated 20 cigarettes per

2   day for the past 20 years; and at page 55, she stated one half

3   pack of cigarettes each day; at page 505, she stated one pack

4   per day.

5               Procedurally, plaintiff applied for Title XVI

6   Supplemental Security Income benefits on February 3, 2016,

7   alleging an onset date of January 1, 2015.  In her field report,

8   she listed several impairments that she claims preclude her

9   ability to perform work functions, including PTSD, COPD,

10  emphysema, depression, anxiety, arthritis, borderline

11  personality disorder, degenerative disc disease, neck and spine

12  issues, right arm pain, bipolar disorder, depressive disorder,

13  foot issues, back issues, tenosynovitis of wrists, right foot

14  and ankle conditions, arthritis in the back, arthritis in the

15  right foot, bilateral tendonitis in the hands.  When asked at

16  the hearing what precluded her from work, she indicated neck

17  issues, anxiety, right foot issue, back issues, right arm issue,

18  thumbs issue, wrist tendonitis, PTSD, bipolar disorder,

19  depression, COPD, and emphysema.  That's at pages 47 and 48 of

20  the Administrative Transcript.

21              A hearing was conducted on April 15, 2018, by

22  Administrative Law Judge Bruce Fein to address plaintiff's

23  application.  ALJ Fein issued an unfavorable decision on

24  July 19, 2018.  That became a final determination of the agency

25  on March 4, 2019, when the Social Security Administration

1    Appeals Council denied plaintiff's application for review.  This

2    action was commenced on April 19, 2019, and is timely.

3              In the Administrative Law Judge's decision, which I

4    found to be extremely comprehensive, ALJ Fein applied the

5    familiar five-step test for determining disability.  At step

6    one, he concluded that plaintiff had not engaged in substantial

7    gainful activity since the date of her application on

8    February 3, 2016.

9              At step two, ALJ Fein found that plaintiff suffers

10   from several impairments that impose more than minimal

11   limitation on her ability to perform work-related functions,

12   including bipolar disorder, PTSD, borderline personality

13   disorder, status post talocalcaneal fusion of right foot, status

14   post C5-6 anterior cervical discectomy with fusion, depressive

15   disorder, and anxiety disorder.

16             At step three, ALJ Fein concluded that plaintiff's

17   conditions do not meet or medically equal any of the listed

18   presumptively disabling conditions set forth in the

19   Commissioner's regulations, specifically considering listings

20   1.02, 1.03, 1.04, 12.04, 12.06, 12.08, and 12.15.

21             The Administrative Law Judge next determined

22   plaintiff's residual functional capacity, or RFC, to include the

23   ability to lift and carry 10 pounds frequently and 20 pounds

24   occasionally, sit for six hours in an eight-hour workday with

25   normal breaks, stand and walk for two hours in an eight-hour day

 1   with normal breaks.  He went on to conclude that she suffers

 2   from additional physical and mental limitations -- I should say

 3   limitations based on, quote, physical and mental impairments,

 4   which we'll come back to further on in this opinion.

 5            At step four, applying that residual functional

 6   capacity, ALJ Fein concluded that plaintiff did not have any

 7   significant past relevant work to consider and proceeded to step

 8   five where he applied the Medical-Vocational Guidelines set

 9   forth in the Commissioner's regulations, the so-called grids.

10   And based on Grid Rule 201.27, which is a grid rule that applies

11   to sedentary work, the ALJ concluded that plaintiff was not

12   disabled at the relevant time.

13            As you know, my task is limited, the standard of

14   review which the Court must apply is extremely deferential.  The

15   Court must determine whether correct legal principles were

16   applied and the resulting determination is supported by

17   substantial evidence.  Substantial evidence is defined to mean

18   such relevant evidence as a reasonable person would find

19   adequate to support a conclusion.  The Second Circuit Court of

20   Appeals in *Brault v. Social Security Administration*

21   *Commissioner,* reported 683 F.3d 443, a decision issued in 2012,

22   noted that this is an extremely stringent standard, it is more

23   exacting than the clearly erroneous standard.  The Court, in

24   passing, also noted in *Brault* that the substantial evidence

25   standard means once an ALJ finds a fact, it can be rejected only

1   if a reasonable factfinder would have to conclude otherwise.

2            In this case, plaintiff raises four basic

3   contentions.  She alleges error at step two for the ALJ's

4   failure to consider COPD as severe; she challenges the ALJ's

5   evaluation of the medical opinions in the record, and

6   specifically including Dr. Cole's opinion regarding irritants

7   and the opinions regarding plaintiff's mental limitations; she

8   challenges the ALJ's analysis of plaintiff's subjective

9   complaints, what we used to call the credibility two-step

10  analysis; and lastly, she contends at step five that the

11  Commissioner improperly resorted to the Medical-Vocational

12  Guidelines rather than eliciting testimony and opinion evidence

13  from a vocational expert.  As you know, the burden of proof in

14  this case rests with the claimant through step four.  It is the

15  claimant's burden to establish, among other things, her

16  impairments and the resulting limitations on the ability to

17  perform work functions.

18            Addressing the first argument, the governing

19  regulations provide that an impairment, or combination of

20  impairments, is not severe if it does not significantly limit a

21  claimant's physical or mental ability to do basic work

22  activities, 20 CFR Section 404.1521(a), and there's a

23  corresponding regulation in the 416 series governing SSI

24  applications.  It is true that the second step requirement is de

25  minimis and intended only to screen out the truly weakest of

1   impairments, *Dixon v. Shalala*, 54 F.3d 1019, a Second Circuit

2   case from 1995.  Importantly, however, the mere presence of a

3   diagnosed disease or impairment does not in and of itself prove

4   the limitation on ability to perform work-related functions.

5          I agree with the Commissioner's argument that any

6   error at step two is likely harmless because the ALJ did proceed

7   to the third step in the sequential analysis based on the

8   finding of other impairments, and at page 27 did, again, come

9   back and consider the potential effects of COPD on the ability

10  to perform work functions, but I further find that there's no

11  error at step two.  The ALJ explained his rejection of COPD as

12  severe at both pages 17 and page 27 of the Administrative

13  Transcript.  The records of plaintiff's treatment concerning

14  COPD show, at times, only a mild case and, at other times, show

15  that she is symptom free or asymptomatic, including at pages

16  443, 448, 1283, 1288, 1278, and 1581 of the Administrative

17  Transcript.

18         I recognize that Dr. Cole says that the plaintiff,

19  quote, should avoid irritants, but it is also noteworthy that

20  plaintiff is a longstanding smoker.  In any event, I find no

21  error and I find that the rejection of COPD as severe is

22  appropriately stated and defended by the Commissioner.

23         In terms of weighing the medical opinions, for a

24  similar reason I find that Dr. Cole's opinion concerning

25  irritants was not adopted.  It is for the Administrative Law

 1   Judge to weigh medical opinion and evidence under *Veino.*  I find

 2   that the Commissioner's decision concerning the irritant issue

 3   is well explained and supported by substantial evidence as

 4   indicated.  I'm not sure I agree with the Commissioner that if

 5   there was a limitation on the exposure to irritants it would not

 6   effect the analysis at step five.  SSR 85-15 speaks to irritants

 7   and environmental restrictions and indicates that where an

 8   environmental restriction falls between very little and

 9   excessive, resolution of the issue will generally require

10   consultation of occupational reference materials or the services

11   of a vocational expert.  Again, I find no error in the failure

12   to include any limitation concerning exposure to irritants in

13   the residual functional capacity finding.

14           Turning to the issue of mental impairments, with the

15   specific issue of the ability to deal with supervisors and

16   coworkers, there are several opinions that address that in the

17   record.  Dr. Pzetzo -- I won't venture to try to pronounce that

18   name -- he is a non-examining consultant.  He found a moderate

19   limitation in that area at pages 78 and 73.  The opinion was

20   given some weight by the Administrative Law Judge.  Dr. Santoro,

21   an examining consultant, found a moderate difficulty in relating

22   to others at page 502.  The plaintiff's therapist, Chrystal

23   Fox-McCormick, found a marked limitation in this area at page

24   681.  That, however, was rejected for two reasons:  Number one,

25   under the regulations that were in place at the time,

1    plaintiff's claim was adjudicated, she was not an acceptable

2    medical source and she had limited treatment at the time this

3    opinion was rendered since she had only begun treating plaintiff

4    in December of 2016.  What the ALJ noted was that another

5    non-examining physician, Dr. De Paz-Ortiz, found no significant

6    limitation in this area at page 737.  That opinion was given the

7    most weight at page 27 of the Administrative Transcript.

8            Again, under *Veino*, it was for the Administrative Law

9    Judge to weigh these countering opinions and it would be

10   improper for the Court to reweigh them.  I note that there is no

11   opinion from an acceptable treating source to the contrary of

12   Dr. De Paz-Ortiz's opinion and that might change the analysis.

13   I also note that at page 200 of the Administrative Transcript,

14   on April 4, 2016, the plaintiff stated she has no difficulty in

15   getting along with bosses, police, landlords or other people

16   with authority and has never lost a job because of problems

17   getting along with people.  So I find no error in the weighing

18   of the opinions, it was for the Administrative Law Judge to

19   weigh them and to explain how each was evaluated, and that

20   explanation was made.

21           The credibility analysis, I'll call it the weighing

22   of plaintiff's subjective complaints, is governed by SSR 16-3p.

23   The Administrative Law Judge did not merely state without

24   explanation why he found plaintiff's claims not to be fully

25   credible.  There was some extensive discussion between pages 20

1    and 29 of the Administrative Transcript.  He concluded that they

2    were not fully credible at page 26, but the opinion, of course,

3    must be read as a whole.  Plaintiff's physical conditions and

4    claims were evaluated at page 20 to 25 and some of the factors

5    deemed appropriate and appropriately considered by the

6    Administrative Law Judge included the fact that she was not

7    taking any prescription pain medications and her treatment had

8    been fairly conservative after the surgeries and relatively

9    benign findings are reflected in the medical records.

10           The mental condition and claims were evaluated at

11   pages 25 and 26.  Once again, the Administrative Law Judge

12   considered those claims, but against the inconsistent treatment

13   that plaintiff was receiving and the attendance issues, which

14   are reflected in the records, it is for the Administrative Law

15   Judge to weigh plaintiff's subjective claims and his

16   determination is entitled to considerable deference.  When the

17   record is considered as a whole, I find no error in the

18   evaluation of plaintiff's subjective complaints.

19           The last issue is one that I found intriguing and a

20   somewhat close case.  The Commissioner, of course, bears the

21   burden at step five.  When the Administrative Law Judge noted

22   that although some of the exertional limitations would support a

23   finding of light work, because of plaintiff's inability to walk

24   and stand the required amount of time under light work, he

25   considered the Medical-Vocational Guidelines relating to

1   sedentary work.  He concluded that the grids could be relied on

2   and that Grid Rule 201.27 would direct a finding of no

3   disability.

4           A case where there are both exertional and

5   nonexertional limitations is controlled at step five by SSR

6   83-14.  In this case, the Administrative Law Judge did consider

7   that grid rule.  He found that the climbing limitation would

8   have no significant effect on the ability to perform work

9   functions and he turned to SSR 85-15 for guidance.  He also

10  found that the ability to frequently balance, stoop, kneel,

11  crouch, and crawl would have no significant impact on the job

12  base under SSR 96-9p, and that is supported by SSR 85-15.

13          I know that one of my former colleagues, Magistrate

14  Judge Andrew Peck, in *Prince* was critical -- *Prince v. Colvin*,

15  2015 WL 1408411, was critical of resort to SSR 85-15 when there

16  were both exertional and non-exertional limitations, but I think

17  that it can inform and provide guidance as to what impact

18  certain limitations would have on the erosion of the job base on

19  which the grids are predicated.

20          Mentally, the Administrative Law Judge concluded that

21  plaintiff is capable of performing simple routine and repetitive

22  tasks, performing low stress work, which is defined as requiring

23  only occasional decisionmaking, occasional changes in the work

24  setting, and occasional judgment, and occasionally interacting

25  with the public.  That does not erode the job base.  SSR 85-15

HEATHER K. v. SOCIAL SECURITY                    14

1    provides that, quote, the basic mental demands of competitive,

2    remunerative, unskilled work include the abilities (on a

3    sustained basis) to understand, carry out, and remember simple

4    instructions; to respond appropriately to supervision,

5    coworkers, and usual work situations; and to deal with changes

6    in a routine work setting.  A substantial loss of the ability to

7    meet any of these basic work activities would severely limit the

8    potential job base.

9              As the Administrative Law Judge found, the RFC

10   indicates that the plaintiff does retain the ability to meet the

11   basic requirements of work under SSR 85-15, so I find that the

12   Commissioner's decision at step five was appropriate and that

13   the Commissioner carried its burden at step five to show that

14   plaintiff is not disabled based on the application of the

15   Medical-Vocational Guidelines.

16             So in conclusion, I find no error and that the

17   determination is supported by substantial evidence.  I will

18   grant judgment on the pleadings to the defendant and direct

19   dismissal of the plaintiff's complaint.

20             Again, thank you both for excellent presentations.  I

21   hope you stay safe in this interesting environment.

22             MR. PERE:  Thank you very much, your Honor.

23             MS. KRUPER:  Thank you, your Honor.  Everybody, stay

24   safe.

25             THE COURTROOM DEPUTY:  Thank you.

1          THE COURT:  Thank you.

2          (Time noted:  11:57 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

16

```
 1
 2                    CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6   NYRCR, Official U.S. Court Reporter, in and for the United
 7   States District Court for the Northern District of New York, DO
 8   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9   States Code, that the foregoing is a true and correct transcript
10   of the stenographically reported proceedings held in the
11   above-entitled matter and that the transcript page format is in
12   conformance with the regulations of the Judicial Conference of
13   the United States.
14
15            Dated this 7th day of May, 2020.
16
17            X Hannah F. Cavanaugh
18              HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19              Official U.S. Court Reporter
20
21
22
23
24
25
```